IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**WILLIAM CECIL BAXTER,**

    **Plaintiff,**

vs.                                                Case No. 4:09cv74-SPM/WCS

**CLIFFORD ADAM, et al.,**

    **Defendants.**

_____/

## SIXTH REPORT AND RECOMMENDATION

       A motion for summary judgment was filed by Defendant Coleman on November 3. Doc. 126. Plaintiff was advised of his obligation to respond to the motion, doc. 129, and he has filed his response, doc. 132, and an additional response, doc. 138, after Defendant Coleman filed a supplement, doc. 135. The motion is ready for a ruling, and these four documents have been considered.

**Legal standards governing a motion for summary judgment**

       On a motion for summary judgment, Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. Id. An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v.

Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

   "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

When Plaintiff entered the custody of the Department of Corrections, his orthopedic boots and inserts[1] were taken from him at the Reception Center (on August 29, 2007), and Plaintiff was advised he would be provided "adequate footwear" once he was settled at his permanent institution. Doc. 132, Ex. A. Plaintiff was given a pair of "state Brogans to suffice" until then. *Id.* Plaintiff was first seen in the Brace Clinic by Howard McClunney and received a pair of Dr. Comfort boots on December 14, 2007. *Id.; see also* doc. 61-3, Ex. C8. Plaintiff was seen again in the Brace Clinic on July 10, 2008, and "boots were ordered and a follow-up appointment scheduled for the fitting." Doc. 132, p. 12.

Plaintiff asserts that he had a history of wearing Redwing and Timberland boots.[2] Doc. 132, p. 3, *citing* doc. 61, ex. C5. The document cited by Plaintiff indicated he advised that he had Timberland boots when he entered the Department of Corrections, but that statement was made to a nurse at Franklin Correctional Institution on October 15, 2007, and *not* to Defendant Coleman. Doc. 61-3, p. 5 (Ex. C5).

---

[1] Plaintiff had numerous surgeries over 20 years ago and received a skin graft on his foot. Doc. 132, p. 11. Plaintiff's left "foot was half amputated in motorcycle accident 20 yrs. ago." Doc. 61-3, Ex. C3.

[2] Plaintiff states in his response to the summary judgment motion that he requested Timberland boots, but Defendant Coleman said "he would order a pair of Spotbilt boots that would provide adequate protection for Plaintiff's skin graft . . . ." Doc. 132, p. 3. Plaintiff did not present evidence to support that assertion, however.

Case No. 4:09cv74-SPM/WCS

Defendant Coleman is an employee of Advanced Prosthetics of America, Inc., and holds a Bachelor of Science degree in kinesiology.[3]  Doc. 126-1, Ex. A (Coleman affidavit).  Defendant Coleman is not a medical doctor.  *Id.*

The Department of Corrections operates the North Florida Reception and Medical Center in part as a health care facility for inmates confined in the state prison system.  *Id.*  During July of 2008, Advanced Prosthetics was serving as an outside consultant for the medical center and provided prosthetic and orthotic services to state prisoners "in conjunction with prescriptions provided by DOC-employed physicians."  *Id.*  During this time, Defendant Coleman provided "consulting at the Brace Clinic, on average, one day per week."  *Id.*

Defendant Coleman's duties "involved assessing and fitting prosthetics and orthotics for inmates."  *Id.*  At the end of an initial appointment with an inmate, Defendant Coleman would "fill out recommendations for the order of specific prosthetics and/or orthotics."  *Id.*  Advanced Prosthetics would place the order, and Defendant Coleman was not involved in procurement of the orthotic or prosthetic devices.  *Id.*  Once the ordered product was received at the Brace Clinic, whichever Advanced Prosthetic "employee was serving the Brace Clinic on the day of the follow up appointment would see the specific inmate."  *Id.*

Defendant Coleman saw Plaintiff at the Brace Clinic on July 10, 2008.  Doc. 126-1, Ex. A (Coleman affidavit).   Plaintiff complained of "significant irritation to the skin graft on his foot by the Dr. Comfort brand boots issued to him by the DOC."  *Id.*  Plaintiff

---

[3] Kinesiology, also known as "human kinetics" is the science of human and animal movement.

reported that he had previously worn size 10½ D Spotbilt boots and requested that specific brand be ordered to replace the Department's Dr. Comfort brand boots. *Id.* Defendant Coleman did as requested and "recommended that [Advanced Prosthetics] order the 10½ D Spotbilt boots to fit on [Plaintiff's] next visit." *Id.* That was Defendant Coleman's only interaction with Plaintiff. *Id.*

Attached to Defendant's affidavit is an Exhibit B, which is the consultant's report. Doc. 126-2 (Consultant's report). That report includes the statement that Plaintiff "would like new Spotbilt boot to replace his current Dr. Comforts brand boot because of "significant irritation at skingraft area . . . " *Id.* The recommendation was to "order 10½ D Spotbilt boot to fit on next visit." *Id.*

On September 18, 2008, the Department learned that the Spotbilt boots requested by Plaintiff and recommended by Defendant Coleman were no longer available for purchase. Doc. 126, p. 3, *citing* doc. 61-3, p. 24. A follow-up appointment took place on October 16, 2008, and Plaintiff was seen by another consultant, not Defendant Coleman, who recommended that custom-molded shoes be provided to Plaintiff with a partial foot insert. Doc. 126, p. 3, *citing* doc. 61-3, p. 23. Subsequent appointments to the Brace Clinic involved other consultants as well, not Defendant Coleman. Doc. 126, p. 3; doc. 126, Ex. A.

The medical records from the Department of Corrections reveal that on September 18, 2008, medical personnel from Franklin Correctional Institution "contacted Advance Brace to inquire on boots" for Plaintiff. Doc. 61-3, p. 24. "Patti," from Advance Brace, said there was a note in their file that they were "not able to get Spotbilt Boots" as the "company discontinued item." *Id.* It was also noted on

September 24, 2008, that "Patti" would contact the Reception and Medical center "and request a [follow-up] appointment date." would reschedule another brace clinic appointment and possible order boots elsewhere.  *Id.*

**Analysis**

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  A " 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977).  Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40 F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

Deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm.  Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994).  Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a basic human need.  Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  To prove an Eighth Amendment claim

for the denial of medical care, a plaintiff must show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Put another way, once a prisoner shows that he has a serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

Here, there is evidence of only one interaction between Defendant Coleman and Plaintiff. The consultation visit at the Brace Clinic was scheduled by the Department of Corrections. There is no evidence that Defendant Coleman was responsible for that appointment, in either making it or delaying it.

Furthermore, Defendant Coleman was not responsible for issuance of the Dr. Comfort boots in December of 2007. He only saw Plaintiff once, on July 10, 2008. Doc. 135, p. 2. Defendant Coleman is not a physician and is not qualified to provide "treatment" plans for Plaintiff. His only role "was to consult on the fitting of orthotics for Plaintiff – not to diagnose and treat a medical condition." Doc. 135, p. 2. Defendant Coleman simply "consulted with Plaintiff and made a recommendation that Plaintiff be provided with Spotbilt boots as he requested." Doc. 135, p. 4. It is undisputed that Spotbilt boots were "no longer available." *Id.* Defendant Coleman was not responsible for that unavailability.

Thus, there is no evidence that Defendant Coleman was deliberately indifferent to Plaintiff's medical condition. Summary judgment should be granted in favor of Defendant Coleman.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Coleman's motion for summary judgment, doc. 126, be **GRANTED** and judgment entered in his favor.

**IN CHAMBERS** at Tallahassee, Florida, on May 3, 2011.


   S/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**